FILED IN MY OFFICE
DISTRICT COURT CLERK
5/27/2017 10:13:36 AM
James A. Noel
Patricia Serna

SECOND JUDICIAL DISTRICT COURT
COUNTY OF BERNALILLO
STATE OF NEW MEXICO

GRACIELA GOMEZ, )
                 )
       Plaintiff, )
                 )
v. )
                 )
CATHY GARLINGER; )
LIBERTY MUTUAL GROUP, INC., )    Civil Action No:  D-202-CV-2017-03803
d/b/a LIBERTY MUTUAL FIRE )
INSURANCE COMPANY; )
AND ADJUSTERS PAMELA BLAKE; )
BARBARA MERRING; VICKI MATLACK; )
ZACHERY WEICHMAN, AND )
PRESENTLY UNKNOWN JOHN DOES, )
                 )
       Defendants. )
                 )

**COMPLAINT FOR BREACH OF CONTRACT, NEGLIGENCE, FRAUD, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, VIOLATION OF NEW MEXICO UNFAIR CLAIMS PRACTICES ACT, VIOLATION OF NEW MEXICO UNFAIR TRADE PRACTICES ACT, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, AND PUNITIVE DAMAGES**

    **NOW COMES** the Plaintiff Graciela Gomez, by and through her counsel of record,

Bleus & Associates, LLC, and for her causes of action, states:

    1.    Plaintiff Graciela Gomez was at all times relevant and material hereto, a resident

of the City of Albuquerque, County of Bernalillo, State of New Mexico.

    2.    Upon information and belief, Underinsured tortfeasor Cathy Garlinger was at all

times relevant and material hereto, a resident of the City of Edgewood, County of Santa Fe, State

of New Mexico.

    3.    Upon information and belief, Defendant Liberty Mutual Group, Inc. d/b/a Liberty

Mutual Fire Insurance Company (hereinafter, Defendant "Liberty Mutual" or, collectively,

"Defendants") is a foreign corporation doing business in the State of New Mexico by issuing



automobile liability insurance policies to New Mexico residents. Liberty Mutual maintains a local New Mexico Office, located at 6410 Coors Blvd., Suite 100, Albuquerque, NM 87120. At the time of the incident, made the basis of the instant lawsuit, Gracelia Gomez and Patrick Gomez procured an insurance policy from Liberty Mutual, and or their agents, servants and/or employees at the local office. By force of legislative enactment, the Financial Responsibility Act inures to the benefit of the public and no language within said Act precludes joinder of Defendant Liberty Mutual to this suit. Therefore, Defendant Liberty Mutual is a necessary and proper party to this action, and this Court has *in personam* jurisdiction over Defendant Liberty Mutual and the subject matter of this litigation.

4.     Based upon information and belief and at all times relevant, Defendant Pamela Blake was an authorized supervisor, manager, agent, adjuster, claim representative, and/or employee of Defendant Liberty Mutual. Defendant Blake was authorized to perform and did perform business for Defendant Liberty Mutual in the State of New Mexico through the claims handling of insurance policies in the State of New Mexico. As such, Defendant Blake is subject to personal jurisdiction in the State of New Mexico. Defendant Blake may be served through the New Mexico Department of Insurance.

5.     Based upon information and belief and at all times relevant, Defendant Barbara Merring was an authorized supervisor, manager, agent, adjuster, claim representative, and/or employee of Defendant Liberty Mutual. Defendant Merring was authorized to perform and did perform business for Defendant Liberty Mutual in the State of New Mexico through the claims handling of insurance policies in the State of New Mexico. As such, Defendant Merring is subject to personal jurisdiction in the State of New Mexico. Defendant Merring may be served through the New Mexico Department of Insurance.

2

6.      Based upon information and belief and at all times relevant, Defendant Vicki Matlack was an authorized supervisor, manager, agent, adjuster, claim representative, and/or employee of Defendant Liberty Mutual. Defendant Matlack was authorized to perform and did perform business for Defendant Liberty Mutual in the State of New Mexico through the claims handling of insurance policies in the State of New Mexico. As such, Defendant Matlack is subject to personal jurisdiction in the State of New Mexico.  Defendant Matlack may be served through the New Mexico Department of Insurance.

7.      Based upon information and belief and at all times relevant, Defendant Zachery Weichman was an authorized supervisor, manager, agent, adjuster, claim representative, and/or employee of Defendant Liberty Mutual. Defendant Weichman was authorized to perform and did perform business for Defendant Liberty Mutual in the State of New Mexico through the claims handling of insurance policies in the State of New Mexico. As such, Defendant Weichman is subject to personal jurisdiction in the State of New Mexico.  Defendant Weichman may be served through the New Mexico Department of Insurance.

8.      Defendant John Doe Agents and Adjusters are unknown entities; employers and/or employees, adjusters, claim representatives, agents, or subsidiaries of Defendant Liberty Mutual, acting within the course and scope of their relationship, and at all times herein performed business for Defendant Liberty Mutual in the State of New Mexico. John Doe Agents and Adjusters regularly do business in the State of New Mexico by and through the sale of insurance and/or the claims handling of insurance policies in the State of New Mexico, and derive substantial economic benefit from the sale of those policies.  As such, Defendants John Doe Agents and Adjusters are subject to personal jurisdiction in the State of New Mexico.

9.      At all times relevant and material, Defendant John Does (hereinafter, collectively, "Defendants") were acting as agents, adjusters, servants, joint venturers, partners, employees, employers, and/or representatives of Defendant Liberty Mutual, and were acting within the course and scope of their authority as such agents, adjusters, servants, joint venturers, partners, managers, supervisors, employees, employers and/or representatives. Each is responsible for his or her own conduct and is vicariously responsible for the conduct of the other.

10.     The acts and conduct alleged herein were known to; authorized; and/or ratified by Defendant Liberty Mutual.

11.     All acts complained of herein occurred within the County of Bernalillo, State of New Mexico.

12.     Jurisdiction and venue of the Court are proper in the District Court of Bernalillo County, New Mexico, pursuant to Section 38-3-1 NMSA (1978).

## I.    STATEMENT OF FACTS

13.     On or about May 27, 2011, at approximately 7:30 a.m., Plaintiff Graciela Gomez was the operator of a motor vehicle traveling along a public access road, between Central and Dr. Martin Luther King Dr., while in Bernalillo County, New Mexico.

14.     On or about the same date and time, Underinsured tortfeasor Cathy Garlinger was the operator of motor vehicle that was also traveling along public access road, between Central and Dr. Martin Luther King Dr., while in Bernalillo County, New Mexico.

15.     On or about May 27, 2011, Underinsured tortfeasor Cathy Garlinger — owing a duty to exercise reasonable care in the operation of her vehicle—did negligently, carelessly, recklessly and/or in violation of the laws and regulations of the State of New Mexico maintained, controlled, and/or operated a motor vehicle so as to cause her vehicle to collide into the rear of

Plaintiff's motor vehicle, thus breaching her aforementioned duty by failing to operate her vehicle in a safe, reasonable, and prudent manner.

16.     On the date in question, Underinsured tortfeasor Cathy Garlinger did negligently operate her motor vehicle while traveling too fast for the conditions; did fail to keep a proper lookout for traffic; and/or did follow too closely and subsequently crashed her vehicle into the rear of Plaintiff Graciela Gomez' motor vehicle, causing an accident and injury to the Plaintiff.

17.     As a result of the impact, Plaintiff Gomez suffered personal injuries to her body, with a subsequent loss of function as a direct and proximate result of the collision, and did incur medical damages, property damage, out of pocket expenses, pain and suffering, and loss of enjoyment of life as a direct and proximate result of her injuries.

18.     As a result of the rear-end collision by Underinsured tortfeasor Garlinger, Plaintiff Gomez pursued a claim against the tortfeasor for her negligent role in causing the crash, which forms the basis of the instant lawsuit.

19.     Plaintiff Gomez's medical care was provided by the following providers: Presbyterian Hospital; Atrisco Family Healthcare; Gonstead Family Chiropractic; Upright MRI of New Mexico; and Simplistic Medical, LLC. The total medical expenses directly related to Plaintiff Gomez's care were approximately **$ 14,044.53+**.

20.     As a result of her injuries, Plaintiff pursued a claim against the negligent tortfeasor and on February 16, 2015, resolved her claim with the tortfeasor and her insurer in exchange for the tortfeasor's policy limits representing $25,000.00.

21.     On the date of the crash, the tortfeasor, Cathy Garlinger was grossly Underinsured.

22.     Since tortfeasor Garlinger was <u>grossly</u> <u>underinsured</u>, Plaintiff pursued a timely claim through her Uninsured/Underinsured Motorist policy of insurance through Defendant Liberty Mutual for all of her damages, in order to be made whole.

23.     On February 2, 2015, Plaintiff sought assent from Liberty Mutual to sanction the underlying settlement.

24.     Thereafter, on February 5, 2015, Defendant, Zachery Weichman granted permission to settle with the underinsured tortfeasor and her insurer, Dairyland Insurance Company.

25.     On June 17, 2011, Plaintiff informed Defendant Liberty Mutual of the subject crash and representation of counsel.

26.     On June 23, 2011, Defendant, Pamela Blake forwarded correspondence to Plaintiff's counsel indicating, "Liberty Mutual is in receipt of your letter advising us that you represent the Claimant named above."

27.     On August 28, 2013, Plaintiff forwarded a complete demand package to Defendant Liberty Mutual for review and evaluation.

28.     On October 4, 2013, Defendant, Zachery Weichman forwarded correspondence to Plaintiff's counsel indicating, "I am in receipt of your demand for Gracie Gomez's Underinsured Motorist claim. Please be advised that we will need written confirmation of the tortfeasor's limits in order to complete an evaluation of this claim."

29.     Defendant Liberty Mutual is a conglomerate insurance carrier, which provided automobile insurance policies to thousands of New Mexico residents, by and through its agents, adjusters, claim representatives and/or employees, and sold uniform and standard insurance to Plaintiff Gomez and her husband.

30.     Defendants thereafter knowingly, wantonly, intentionally and systemically engaged in the unlawful practice of cheating its insureds out of coverage benefits and proffering no Uninsured/Underinsured settlement to its named insured policyholder, Plaintiff Gomez, in response to her demand for Uninsured/Underinsured motorist benefits.

31.     Presently, Defendants continue to "low ball" and intentionally undervalue its insured's claims. Defendants have engaged in these practices since 2013, and continue to engage in these practices to date, with such frequency and resolve as to ***indicate that such conduct is Defendants' general business practice***.

32.     Moreover, on October 12, 2013, Defendants further placed a $1,000 lien on Plaintiff's case for reimbursement from the insured's underlying settlement for an improper offset as to Med Pay, despite knowledge that Plaintiff was pursuing a valid underinsured claim through her policy of insurance with Defendants. As such, Defendants knew that they were NOT ENTITLED TO ANY REIMBURSEMENT from the insured's underlying settlement with the grossly underinsured tortfeasor.

33.     All of Defendants' acts and omissions were done knowingly, willfully, intentionally and for Defendant Liberty Mutual's financial gain, all to the Plaintiff's great financial detriment.

34.     Defendants knowingly, wantonly, willfully, intentionally and systematically failed to timely, adequately and/or thoroughly investigate Plaintiff's Uninsured/Underinsured claim.

35.     Defendants knowingly, wantonly, willfully, intentionally and systematically delayed and denied Plaintiff's Uninsured/Underinsured claim, thereby engaging in unlawful conduct as stated herein, solely for Defendants' financial gain.

36.     Defendants have acted and continue to engage in unreasonable, unfair, inequitable, frivolous, knowing, malicious, intentional and/or oppressive conduct, all in contravention of Plaintiff's rights, and in furtherance of Defendants' collective and continued financial gain and profit.

## II.   NATURE OF THE ACTION

37.     Plaintiff Gomez procured an insurance policy from Defendant Liberty Mutual and its agents, adjusters and/or employees at the Liberty Mutual Office located at 6410 Coors Blvd, NW, Suite 100, in Albuquerque, NM. The automobile insurance policy number is AO2-298-252946-40 1 5 (hereinafter, the "Policy").

38.     The Policy covered three (3) vehicles: a 2001 GMC Sierra (VIN# 1GTEC19T31Z124955); a 1991 Toyota pickup truck (VIN# JT4RN01P6M0017279); and a 1994 Saturn SL1 (VIN# 1G8ZG5599RZ160193).

39.     The Policy was valid and in effect on the subject date of accident. The Policy provided Uninsured/Underinsured Motorist coverage with limits of $25,000.00 (each person) /50,000.00 (each accident) for a stackable total representing $75,000/150,000.

40.     As a result of the accident, on **June 17, 2011**, Plaintiff, by and through her attorney, submitted a letter of representation to Defendant Liberty Mutual by certified mail return receipt No. 7011 0110 0000 8027 9991, requesting that an Uninsured/Underinsured Motorist claim be established pursuant to the Underinsured/Uninsured Motorist Coverage provisions of Plaintiff's automobile insurance policy purchased through Defendant Liberty Mutual. At this time, Plaintiff's claim was handled by adjuster, Pamela Blake (hereinafter, "Defendant Blake"), pursuant to responsive letters acknowledging coverage by Defendant Liberty Mutual.

41.     On or about **August 28, 2013**, Plaintiff Gomez, by and through counsel, submitted a valid and compensable claim to Defendant Liberty Mutual under the Underinsured/Uninsured Motorist Coverage provisions of the Policy. As part of her demand package, Plaintiff Gomez submitted all medical bills and records available to her. At this time, Plaintiff's claim was handled by claims representative, Zachery Weichman (hereinafter, "Defendant Weichman").

42.     In response, on **October 4, 2013**, Defendant Weichman confirmed receipt of Plaintiff Gomez's Uninsured/Underinsured Motorist Demand Package. In his correspondence, Defendant Weichman informed Plaintiff that "we will need written confirmation of the tortfeasor's limits in order to complete an evaluation of this claim."

43.     Despite his duty to properly investigate the claim, Defendant Weichman further requested: the "full identification information on the tortfeasor to run an asset check"; names of any witnesses to the accident; medical records showing treatment and providers used for the tortfeasor evaluation; signed medical authorizations; clear photos of the vehicle involved; written verification of the tortfeasor's limits of liability coverage; and written verification of whether Plaintiff has any *other* UIM coverage that may apply for this accident.

44.     On **October 9, 2013**, Defendant Weichman <u>incorrectly</u> noted that Plaintiff's claim package did not enclose certain medical bills or records, and further requested the "tortfeasor[']s limits of insurance," despite the fact that these documents had already been sent.

45.     Meanwhile, throughout 2013 Defendant Liberty Mutual [unlawfully] continued to pursue Plaintiff for a $1,000 offset through their subrogation and recovery departments for her medical payments coverage, and eventually placed a $1,000 lien on Plaintiff's case.

46.     Defendant Weichman delayed over a year until **October 29, 2014** to "follow up" with another boilerplate letter which, once again, requested the information that had already been sent by Plaintiff and received by Defendant Liberty Mutual.

47.     In response, Plaintiff informed Defendant Weichman that "**the information you are again requesting was submitted to you over a year ago, on August 28, 2013 and contained in our demand package.**" Plaintiff nevertheless forwarded an *additional* copy of the information requested.

48.     On **February 2, 2015,** Plaintiff sent Defendants a request for authorization of settlement, as to the underlying claim, for tortfeasor Garlinger's policy limits. Plaintiff again reminded Defendants that tortfeasor Garlinger was grossly underinsured to cover Plaintiff's losses, and that she was entitled to the UM/UIM coverage. Plaintiff also informed Defendant Barbara Merring (MedPay/Subrogation) that the $1,000 lien was inappropriate, given the fact that Plaintiff had not yet been made whole.

49.     On that date, Plaintiff informed Defendants Weichman and Barbara Merring (Med Pay Subrogation Dept.), that, Underinsured tortfeasor Garlinger's insurer accepted 100% liability for the underlying accident and as such sought to settle Plaintiff's claim for the tortfeasor's Policy Limits coverage.

50.     Defendants authorized the settlement on February 5, 2015, noting that "this does not indicate that Liberty Mutual has exposure for this loss," and that an "independent investigation and evaluation of this claim will be completed prior to this being determined." Defendant Weichman, once again, requested the information pertaining to billing/records which had been sent and received on two prior occasions.

51.     Thus, on February 11, 2015, Plaintiff submitted a ***third*** UM/UIM demand package to Defendant Liberty Mutual by certified mail, return receipt No. 7014 0510 0000 2622 8666. Plaintiff noted that "the information you are again requesting was submitted to you over two years ago, on August 28, 2013 and contained in our demand package. **The very same information was again sent to your office on October 29, 2014 via Certified Return Receipt Mail and directly to your e-mail address**, which was confirmed today as being the correct e-mail address with your company."

52.     A year and a half since the original claim, on February 20, 2015, Defendants presented an offer of settlement for only **$2,000.00**. Defendant Weichman continued to request and make demands for the same "additional records" from Plaintiff in boilerplate correspondence throughout 2015 and 2016.

53.     Rather than conduct a timely and comprehensive investigation; fairly evaluate Plaintiffs claims; attain the records it feigned not having; or act in good faith and deal fairly with the Plaintiff, Defendant and its' claim representatives, continued to "low ball" the Plaintiff in the hopes of resolving her claim for less than fair value.

54.     Thereafter, beginning February 20, 2015 to December 19, 2016, Defendant Liberty Mutual, stalled, delayed and lowballed the Plaintiff.

55.     Finally, on **December 20, 2016, five (5) years later**, and after being threatened with the instant bad faith lawsuit, that Defendants extended an second, unreasonable and inane offer of settlement offer in the amount of **$6,000.00** in total UIM funds.

56.     Notwithstanding, a supplemental demand package was sent to Defendants on January 14, 2016, which once again demonstrated that tortfeasor Garlinger was grossly

underinsured to cover the damages incurred by the Plaintiff, and indicating that Plaintiff was offended by the entirely unreasonable offer (after nearly 5 years of delay) of only $6,000.00.

57.     On January 26, 2017, Defendants replied with the same (1/26/2017) boilerplate correspondence repeating the offer of $6,000.00 in total, which reflected only the bare minimum, clearly undisputed amounts owed by Defendants.

58.     Again, in March 2, 2017, Defendants sent the same (1/26/2017) boilerplate correspondence and repeating the offer of only $6,000.00.

59.     Again, on April 10, 2017, Defendants sent the same (1/26/2017) boilerplate correspondence and repeating the offer of only $6,000.00.

60.     As this amount was not in dispute, and nearly six (6) and a half years had passed, Plaintiff accepted the $6,000.00 [undisputed amount] and continued to demand the balance of her claim.

61.     Thus, despite being placed on notice of Plaintiff's claim as of June 2011, and receiving her demand packages throughout 2013; 2014; 2015; and 2016, Defendant Liberty Mutual, by and through Defendant Weichman and other adjusters, made *no substantive investigation into the accident*, choosing instead, to continually site inaccurate information in boilerplate correspondence, with the hopes of interposing delay and sending Plaintiff on another wild goose chase.

62.     No valid or reasonable offer was ever made on Plaintiff's claim. Rather, Defendant Liberty Mutual, by and through its employees, strategically reassigned Plaintiff's case and continually delayed payment of Plaintiff's claim for Uninsured/Underinsured Motorist benefits.

63.     Defendant Liberty Mutual by and through its agents, managers, supervisors, adjusters, claim representatives and/or employees, failed in every way to conduct a timely or reasonable investigation into the crash despite being *repeatedly* presented with over $14,000.00+ of medical damages sustained by Plaintiff Gomez. Defendant declined to pay reasonable Uninsured/Underinsured Motorist benefits to Plaintiff for underinsured coverage (pertaining to Underinsured tortfeasor Garlinger).

64.     To date, Defendant Liberty Mutual has never spoken with the officer that investigated the accident.

65.     To date, Defendant Liberty Mutual has never spoken to Defendant Garlinger.

66.     To date, Defendant Liberty Mutual has never spoken to any witnesses to the crash.

67.     To date, Defendant Liberty Mutual has never spoken to any of Plaintiff's medical providers.

68.     Defendant Liberty Mutual, by and through adjusters, claim representatives, managers, supervisor, or employees,  assigned at different times to handle Plaintiff's claim, began making unreasonable "demands for proof" and demands for further documentation already in its possession, in order to delay investigation of Plaintiff's claims and avoid or delay payment of Uninsured/Underinsured Motorist benefits.

69.     To date, Plaintiff has never been fully compensated under her Uninsured/Underinsured Motorist policy.

70.     To date, Defendant continues to aggressively pursue a wrongful and erroneous $1,000.00 MedPay lien through its subrogation department, while stalling and delaying payment of the Underinsured Motorist benefits owed to the Plaintiff.

71.     At all times relevant and material hereto, Defendants had a duty to conduct themselves in good faith and with fair dealings towards Plaintiff as the insured policyholder.

72.     At all times relevant and material hereto, Defendants had a duty to give equal consideration to their interests and to that of their insured policyholders.

73.     At all times relevant and material hereto, Defendants misrepresented to its insured pertinent facts or policy provisions relating to coverage.

74.     At all times relevant and material hereto, Defendants failed to adopt and implement reasonable standards for the prompt investigation and processing of the insured's claim arising under the insured's policy.

75.     At all times relevant and material hereto, Defendants failed to act reasonably under the circumstances to conduct a timely investigation and fairly evaluate the insured's claim.

76.     At all times relevant and material hereto, Defendants misrepresented to the insured the range of benefits afforded to the insured when pursuing a settlement under the Uninsured/Underinsured Motorist coverage under the insured's policy of insurance and whereby the Defendants denied coverage to the insured.

77.     At all times relevant and material hereto, Defendants attempted to mislead and/or intimidate the insured into believing that she was entitled to substantially less than her insurance policy would provide.

78.     Defendants' frivolous or unfounded refusal to pay is the equivalent of a reckless disregard for the interests of the insured.

79.     Pursuant to New Mexico Law, drivers who carry Uninsured/Underinsured Motorist coverage are permitted to make a first-party claim with his/her automobile insurance

carrier for those items of damages that he/she would be legally entitled to recover from a tortfeasor.

80.     Following the subject collision in 2011 and subsequent medical treatment for personal injuries, Plaintiff was caused to spend several months undergoing medical care as a result of her injuries.

81.     Following said accident and as a result of her injuries, Plaintiff Gomez sustained past, present and future pain and suffering, which exists and continues to present date.

82.     Following the automobile accident in 2011 and as a result of her injuries, Plaintiff Gomez sustained a past; present and future loss of income and past; present; and future loss of earning capacity, which exists and continues to present date.

83.     At all times relevant and material hereto, Defendant Liberty Mutual, by and through its adjuster(s), was made aware that the facts and circumstances surrounding Plaintiff's 2011 injuries resulting from the collision involving Underinsured tortfeasor Garlinger.

84.     Despite notice, at all times relevant and material hereto, Defendants summarily Denied Plaintiff's claim for Uninsured/Underinsured Motorist coverage and then insisted that Defendant Liberty Mutual would not honor any claim for Uninsured/Underinsured Motorist benefits totaling more than a mere $6,000.00.

85.     Despite timely notice of the 2011 accident, Defendant Liberty Mutual has failed to reasonably investigate and/or resolve Plaintiff's claim in several respects:

    i. Based on information and belief, as of the filing of this Complaint, Defendant adjusters/claims representatives have not properly investigated Plaintiff's claim in any appreciable manner.

    ii.   Based on information and belief, Defendant adjusters/claims representatives were not properly trained and supervised.

    iii.  Defendants refused to respond to Plaintiff's Uninsured/Underinsured Motorist claim until their unreasonable and self-serving demands for proof were met.

86.    Defendant Liberty Mutual has made no good faith investigation and no good faith attempt to compensate Plaintiff for her losses. All of Plaintiff's demands were ignored and/or rebuffed without justification. Despite overwhelming evidence of Underinsured tortfeasor Garlinger's recklessness/negligence and the debilitating physical injuries Plaintiff was caused to suffer, Defendants refused to meaningfully negotiate Plaintiff's injuries/losses for Uninsured/Underinsured Motorist benefits.

87.    As of the date of this Complaint, Plaintiff's claim for injuries and damages (stemming from a 2011 vehicle accident) has not been resolved by Defendant Liberty Mutual.

88.    Defendants have frivolously and unreasonably refused to pay Plaintiff's claims, effectively holding such funds hostage for its own financial gain and to Plaintiff's financial detriment, and to unfairly decrease the market rate of insurance claims.

## COUNT I – BREACH OF CONTRACT AND THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (Defendant Liberty Mutual)

89.    Plaintiff hereby incorporates all prior and succeeding allegations as if set forth fully herein.

90.    At all times material hereto, Plaintiff was required by law to purchase automobile liability insurance pursuant to NMSA 1978 Section 66-5-201 to 66-5-239.

91.     Plaintiff's motor vehicle insurance policy was valid and in effect at the time of Plaintiff's accident with negligent Underinsured tortfeasor Garlinger; and was in force and effect at all times relevant and material to the allegations set forth in this Complaint.

92.     Plaintiff Gomez had performed in a timely manner all duties and obligations required of her under the terms and conditions of the Defendant Liberty Mutual automobile insurance policy including, but not limited to, payment of all premiums.

93.     At the time of the above stated events, Defendant Liberty Mutual maintained a standard and uniform policy of insurance which was sold to Plaintiff Gomez, and was valid and in effect on the date of Plaintiff's collision.

94.     Plaintiff Gomez purchased the policy of insurance from Defendant Liberty Mutual, placing her trust in Defendant Liberty Mutual and its employees, to act reasonably and in good faith, should Plaintiff ever make a claim against such Policy.

95.     Defendant Liberty Mutual and its employees were obliged to use reasonable skill, care, and knowledge in evaluating and processing claims promptly and thoroughly.

96.     Plaintiff Gomez relied upon Defendant Liberty Mutual to reasonably investigate and process her Uninsured/Underinsured Motorist claim in a timely manner and provide reasonable and fair resolution of such claim.

97.     At all times relevant and material hereto, Defendant Liberty Mutual had a duty to honor its motor vehicle insurance policy issued to the Plaintiff Gomez, including providing any and all benefits for which Plaintiff paid a premium and to which she was entitled to coverage.

98.     Defendant Liberty Mutual and its employees intentionally and negligently failed to investigate and pay Plaintiff's claim as required under the terms of the contract.

17

99.     Defendant Liberty Mutual had a duty to conduct itself in good faith and with fair dealings towards Plaintiff as its insured policyholders.

100.    Defendant Liberty Mutual had a duty to give equal consideration to its interests and to that of its insured policyholder.

101.    Defendant Liberty Mutual's frivolous or unfounded refusal to pay Plaintiff's Underinsured demand is the equivalent of a reckless disregard for the interest of the insured.

102.    Defendant Liberty Mutual's acts and/or omissions breached the terms of its contract with Plaintiff Gomez.  As a direct and proximate result, Plaintiff has suffered and will continue to suffer damages in an amount to be proven at the time of trial.

103.    Defendant Liberty Mutual's breach of contract was intentional and in utter disregard of Plaintiff's rights.

104.    As a direct and proximate result, Plaintiff has suffered and will continue to suffer damages in an amount to be proven at the time of trial.

105.    Defendant's breach of contract was: knowing; intentional; systematic; and in utter disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages against Defendant.

## COUNT II – NEGLIGENCE
### (Defendant Liberty Mutual)

106.    Plaintiff hereby incorporates all prior and succeeding allegations as if set forth fully herein.

107.    Defendant Liberty Mutual expressly and/or impliedly represented that it was selling Plaintiff the Policy in good faith, and that Defendant Liberty Mutual would abide by the terms of the Policy and properly investigate and process any claim Plaintiff might make.

108.     Such representations were material to the formation of Plaintiff's contract of insurance with Defendant Liberty Mutual.

109.     Defendant Liberty Mutual's express and/or implied representation that it would, in good faith, timely and thoroughly investigate and process any valid claim that Plaintiff may make upon her Policy was material to the formation of Plaintiff's contract of insurance with Defendant Liberty Mutual.

110.     Defendant Liberty Mutual failed to exercise ordinary care in the investigation, evaluation, and resolution of Plaintiff's claims under the Policy.  This negligent handling of Plaintiff's claims is evidenced by Defendant Liberty Mutual's repeated reassignment of insurance adjusters, delay in processing claims, failure to communicate with law enforcement, failure to communicate with any witnesses; failure to investigate the claim in any appreciable manner; failure to pay Med Pay in a timely manner; excessive and unreasonable demands for proof, failure to maintain proper documentation regarding liability and Med Pay coverage, and misrepresentation of Defendant Liberty Mutual's policies and procedures to Plaintiff Gomez.

111.     Defendant Liberty Mutual's negligent handling of Plaintiff's claim is further evidenced by Defendant's placement of an unlawful and impermissible $1,000.00 lien on Plaintiff's underlying settlement allegedly concerning Med Pay coverage, coupled with the vigorous pursuit thereof through its subrogation department, all the while Defendant knew that Plaintiff had not been made whole by the settlement for her injuries and was pursuing her rights under the UIM Policy.

112.     That Defendant Liberty Mutual's negligent handling of Plaintiff's claim for over five (5) years resulted in damages to Plaintiff, in an amount to be proven at time of trial.

## COUNT III – FRAUD/MISREPRESENTATION
### (Defendants Liberty Mutual; Named Adjusters/Claims Representatives)

113.    Plaintiff hereby incorporates all prior and succeeding allegations as if set forth fully herein.

114.    Defendant Liberty Mutual fraudulently misrepresented that Plaintiff was receiving an insurance policy that would cover Uninsured and Underinsured Motorist claims, and that Defendant Liberty Mutual could be relied upon to fairly and reasonably evaluate and resolve any claims Plaintiff might make against the Policy.

115.    That Defendant Liberty Mutual, by and through Defendants Anderson, Padilla, and Howell, fraudulently misrepresented their intent to investigate, evaluate, and fairly resolve any claim Plaintiff might make against her policy of insurance.

116.    That Defendant Liberty Mutual repeatedly delayed the resolution of Plaintiff's claim, failed to maintain proper documentation, and refused to pay as promised on Plaintiff's valid claims against the Policy.

117.    That Defendant Liberty Mutual took an impermissible reimbursement and attempted to cheat Plaintiff out of money owed to her; repeatedly delayed the resolution of Plaintiff's Med Pay claim; and refused to make a payment from Plaintiff's no fault Med Pay coverage, until suit was threatened.  Med Pay benefits were not exhausted until over three (3) years after Plaintiff's initial notice and demand.

118.    That Defendants fraudulent conduct resulted in great damage to the Plaintiff in an amount to be proven at trial.

## COUNT IV – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (Defendant Liberty Mutual Insurance Company)

119.    Plaintiff hereby incorporates all prior and succeeding allegations as if set forth fully herein.

120.    Implicit in the insurance contract between Plaintiff Gomez and Defendant Liberty Mutual Insurance Company was the covenant that Defendant Liberty Mutual, at all times, act in good faith and deal honestly and fairly with Plaintiff, who was/is entitled to compensation under the terms of the Policy. Defendant Liberty Mutual had a duty to conduct itself in good faith and with fair dealings towards Plaintiff as its insured policy holder.  Defendant Liberty Mutual also had a duty to give equal consideration to the insured policyholder's interests as that of its own interests.  Lastly, Defendant Liberty Mutual's frivolous or unfounded refusal to pay Plaintiff's claims is the equivalent of a reckless disregard for the interest of the insured.

121.    That Defendant Liberty Mutual breached the covenant of good faith and fair dealing in one or more ways, including, but not limited to:

a.      Failing in bad faith to settle Plaintiff's valid and compensable claim;

b.      Failing and refusing to compensate Plaintiff for her pain and suffering;

c.      Failing to process Plaintiff's claim in a timely manner;

d.      Failing to communicate with Plaintiff;

e.      Failing to undertake a full and proper investigation of Plaintiff's damages;

f.      Making excessive and unreasonable demands for proof;

g.      Failing to maintain proper documentation;

h.      Misrepresenting their policies and procedures to Plaintiff;

i.      Failing and refusing to acknowledge that the terms of the Policy applied to the claims submitted by Plaintiff;

j.      Failing and refusing to promptly and fairly investigate and resolve Plaintiff's claims;

k.      Denying insurance coverage as promised to Plaintiff; and

l.      Unlawfully placing and impermissible $1,000.00 lien upon Plaintiff's claim.

122.    As a direct and proximate result of Defendant Liberty Mutual's acts and/or omissions as alleged herein, Plaintiff has suffered damages in an amount to proven at trial.

123.    Defendant Liberty Mutual's acts and omissions alleged herein were done intentionally, willfully, wantonly, maliciously, and with reckless disregard for the rights of Plaintiff. Accordingly, Plaintiff is entitled to punitive damages in an amount to be determined by the jury and sufficient to punish Defendant Liberty Mutual for its misconduct, and to deter others from engaging in similar conduct in the future.

## COUNT V – INSURANCE BAD FAITH
### (Defendants Liberty Mutual; Named Adjusters/Claims Representatives)

124.    Plaintiff hereby incorporates all prior and succeeding allegations as if set forth fully herein.

125.    Defendant Liberty Mutual Insurance Company acted in bad faith by failing to deal honestly and fairly with Plaintiff, who is entitled to compensation for damages under the Policy, including but not limited to:

a.      Failing and refusing to acknowledge that the terms of the Policy applied to the claim submitted by Plaintiff;

b.      Failing and refusing to promptly and fairly investigate and resolve Plaintiff's claim; and

c.      Denying insurance coverage as promised to Plaintiff.

22

126.     As a direct and proximate result of Defendant Liberty Mutual Insurance Company's bad faith conduct, Plaintiff has suffered damages in an amount to be proven at trial.

127.     Defendant Liberty Mutual's acts and omissions alleged herein were done intentionally, willfully, wantonly, maliciously, and with reckless disregard for the rights of Plaintiff. Accordingly, Plaintiff is entitled to punitive damages in an amount to be determined by the jury and sufficient to punish Defendant Liberty Mutual Insurance Company for its misconduct, and to deter others from engaging in similar conduct in the future.

## COUNT VI – VIOLATION OF THE UNFAIR CLAIMS PRACTICES ACT
### (Defendant Liberty Mutual Insurance Company)

128.     Plaintiff hereby incorporates all prior and succeeding allegations as if set forth fully herein.

129.     Defendant Liberty Mutual Insurance Company has engaged in the business of insurance in the State of New Mexico as defined by New Mexico Insurance Code (NMSA §59A-1-1, *et seq.*), and associated statutes, including in particular the New Mexico Unfair Claims Practices Act (NMSA §59A-16-1, *et seq.*)

130.     Plaintiff is a member of the class of the general public for whose benefit the aforementioned statutes were enacted.

131.     Defendant Liberty Mutual, in committing the acts and omissions alleged herein, violated the statutory duties imposed on it by the New Mexico Unfair Claims Practices Act (NMSA §59A-16-1, *et seq.*), including but not limited to NMSA §59A-16-20.

132.     Plaintiff has a right to bring this action against Defendant Liberty Mutual pursuant to NMSA §59A-16-30, *et seq.*, which permits a private right of action by the Plaintiff.

133.   Defendant Liberty Mutual, in committing the acts and/or omissions alleged herein, violated the statutory duties imposed on it by the New Mexico Unfair Claims Practices Act (NMSA §59A-16-1, *et seq.*), including but not limited to NMSA §59A-16-20.

134.   Plaintiff has a right to bring this action against Defendant Liberty Mutual pursuant to NMSA §59A-16-30, *et seq.*, which permits a private right of action by the Plaintiff, specifically, Plaintiff Gomez is an insured within the meaning of the New Mexico Unfair Insurance Practices Act (UIPA) NMSA 1978, s. 59A-16-1, et. seq.

135.   That the actions of Defendant Liberty Mutual, by and through its agents; adjusters; claims representatives; managers; supervisors; and/or employees, as set forth above, constitute Unfair Insurance Trade Practices prohibited by NMSA 1978 § 59A-16-1 through § 59A-16-30.

136.   That Defendant Liberty Mutual has violated the New Mexico Unfair Claims Practices Act as follows:

a.   Failing and refusing to acknowledge that the terms of the Policy applied to the claims submitted by Plaintiff;

b.   Failing and refusing to promptly and fairly investigate and resolve Plaintiff's claim;

c.   Denying insurance coverage as promised to Plaintiff;

d.   Failing to adopt, implement, and maintain reasonable standards for the prompt investigation and processing of Plaintiff's claim arising under the insured's Policy;

e.   Failing to act in good faith to effectuate prompt, fair, and equitable settlement of the insured's claim in which liability was more than reasonably clear.

f.    Misrepresented to its insured pertinent facts or policy provisions relating to coverage; and

g.    Compelled the insured to institute litigation in order to recover amounts due under a policy by unlawfully denying the insured's claim for "UM/UIM" coverage.

137.   Violations of New Mexico State statute is *negligence per se*.

138.   By refusing coverage and/or delaying payment on a lawful claim for reasons that are frivolous or unfounded, Defendants have acted with reckless disregard for the interests of the insured.

139.   That Defendant Liberty Mutual's acts and/or omissions alleged herein were committed by its employees, representatives, agents, and/or designees, all of which were ratified or acquiesced to by Defendant Liberty Mutual.

140.   That as a direct and proximate result of Defendant Liberty Mutual's acts and/or omissions as alleged herein, Plaintiff suffered damages in an amount to be proven at trial.

141.   That Defendant Liberty Mutual's acts and/or omissions alleged herein were done intentionally, willfully, wantonly, maliciously, and with reckless disregard for the rights of Plaintiff. Accordingly, Plaintiff is entitled to punitive damages in an amount to be determined by the jury and sufficient to punish Defendant Liberty Mutual for its misconduct, and to deter others from engaging in similar conduct in the future.

142.   Additionally, Plaintiff has been forced to retain the services of attorneys to enforce their rights herein, and as such, pursuant to NMSA §59A-16-30 and §39-2-1, Plaintiff is entitled to an award of attorneys' fees and costs associated herewith.

## COUNT VII - VIOLATION OF NEW MEXICO INSURANCE CODE
### (Defendant Liberty Mutual Insurance Company)

143.    Plaintiff hereby incorporates all prior and succeeding allegations as if set forth fully herein.

144.    At all times relevant hereto, Defendant Liberty Mutual Insurance Company operated by and through employee insurance agents, authorized and licensed to sell insurance, and was engaged in "trade" or "commerce" as those terms are defined by the New Mexico Unfair Trade Practices Act (NMSA §57-12-2).

145.    Defendant Liberty Mutual, by and through its agents; adjusters; claim representatives; managers; supervisors and/or employees, has committed "unfair or deceptive trade practice" as that term is defined in NMSA §57-12-2.

146.    Defendant Liberty Mutual Insurance Company, in connection with the sale of the Policy described above, knowingly represented that the services being sold were of a particular standard, quality, or grade.

147.    Defendant Liberty Mutual failed to perform in a manner consistent with its representation and contractual obligations, and as a consequence, has violated the New Mexico Unfair Trade Practices Act NMSA §57-12-2(D)(7).

148.    In committing these acts and/or omissions, Defendant Liberty Mutual further engaged in "unconscionable trade practice" as that term is defined in NMSA §57-12-2.

149.    As a direct and proximate result of the acts and/or omission by Defendant Liberty Mutual Insurance Company, Plaintiff has suffered damages in an amount to be proven at trial.

150.    The acts and/or omissions of Defendant Liberty Mutual were done intentionally, willfully, wantonly, maliciously, and/or with reckless disregard for the rights of Plaintiff. As such, Plaintiff is entitled to recover punitive damages in an amount to be determined by the jury,

and sufficient to punish Defendant Liberty Mutual for its misconduct and to deter others from engaging in similar conduct in the future.

## COUNT VIII – VIOLATION OF NEW MEXICO
## UNFAIR TRADE PRACTICES ACT
### (All Defendants)

151.   Plaintiff hereby incorporates all prior and succeeding allegations as if set forth fully herein.

152.   Defendants' wrongful acts or omissions as alleged in this Complaint were knowing, willful, and intentional violations of the Unfair Practices Act, NMSA 1978 Section 57-12-16.

153.   Defendants' conduct violated NMSA 1978, §57-12-1 *et. seq.*, including §§ 57-12-2(D)(5), (7), (10), (12), (14) and (17).

154.   Defendants' conduct violated NMSA 1978 §57-12-1 et. seq., including §§ 57-12-2(E)(1) and (2).

155.   Defendants' deceit; misrepresentations; denial of Med Pay benefits; and failure to promptly and thoroughly accept; investigate; evaluate; settle; and pay pursuant to the coverage of automobile insurance purchased by the Plaintiff; coupled with Plaintiff Gomez's reasonable expectation flowing from said automobile policy of insurance, is a violation of the aforementioned statutes and was malicious; willful; grossly negligent; reckless; wanton; wrongful and intentional bad faith conduct on the part of the Defendants in total disregard of Plaintiff's rights.

156.   Plaintiff Gomez further alleges that, Defendants have knowingly, wantonly, intentionally, and willfully committed and/or *performed such acts with such frequency, and/or in such a systematic manner, as to indicate a general business practice.*

157.     By unlawfully refusing to promptly pay Uninsured/Underinsured benefits and/or delaying payment on a claim for reasons that are frivolous or unfounded, Defendants have acted with reckless disregard for the interests of the insured policyholder.

158.     As a result, Defendants failed to provide the quality or grade of services contracted by Plaintiff and for which Plaintiff paid a premium.

159.     As a direct and proximate result of Defendants' malicious; knowing; wanton; willful and intentional acts, Plaintiff is entitled to compensatory; incidental; consequential (special) damages; and treble damages or exemplary and punitive damages including but not limited to expenses, attorneys' fees and costs; pre- and post-judgment interest.

## COUNT IX – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (All Defendants)

160.     Plaintiff hereby incorporates all prior and succeeding allegations as if set forth fully herein.

161.     The conduct of Defendant Liberty Mutual Insurance Company, by and through its agents, adjusters, claim representatives, managers, supervisors, and/or employees, as described herein, was extreme and outrageous under the circumstances.

162.     Defendants' acted intentionally or recklessly as outlined herein.

163.     As a direct and proximate result of Defendants' conduct, Plaintiff Gomez suffered severe emotional distress and is entitled to recover damages in an amount to be proven at trial.

## COUNT X – NEGLIGENT MISREPRESENTATION
## (All Defendants)

164.     Plaintiff hereby incorporates all prior and succeeding allegations as if set forth fully herein.

165.    The representation as to the particular standard regarding the quality and grade of Plaintiff's Uninsured/Underinsured coverage made by all Defendants to Plaintiff regarding automobile insurance coverage with Defendant Liberty Mutual, made by and through Defendants' agents, adjusters, claim representatives, managers, supervisors, and/or employees, was made carelessly and/or negligently.

166.    Defendants knowingly, wantonly, willfully, intentionally and systemically, engaged in these practices, and have engaged in these practices, with such frequency as to indicate that such conduct is Defendants' general business practice.

167.    The acts and failures to act by Defendants, as enumerated above, were negligent.

168.    As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff Gomez has suffered and continues to suffer damages.

169.    As a direct and proximate result of Defendants' malicious; knowing; wanton; and/or intentional acts, Plaintiff is entitled to compensatory; incidental; consequential (special) damages; and treble damages or exemplary and punitive damages including but not limited to expenses, attorney's fees and costs; pre and post judgment interest.

## COUNT XI – NEGLIGENCE *PER SE*
### (All Defendants)

170.    Plaintiff hereby incorporates all prior and succeeding allegations as if set forth fully herein.

171.    Defendants failed to abide by their statutory duties under New Mexico's Uninsured/Underinsured motorist statute, NMSA 1978, §66-5-301, and such violations are negligence *per se*.

172.    Defendants failed to abide by their statutory duties under the New Mexico Insurance Code, NMSA 1978, §59A-16-1, *et seq.*, and such violations are negligence *per se*.

173.    Defendants failed to abide by their statutory duties under the New Mexico Unfair Trade Practices Act, NMSA 1978, §§57-12-1, *et. seq.* (1984), and such violations are negligence *per se*.

174.    Defendants failed to abide by their statutory duties under the New Mexico Unfair Trade Practices Act, NMSA 1978 §57-12-2(D)(7), and such violations are negligence *per se*.

175.    The aforementioned laws were enacted for the protection of New Mexico citizens, which include Plaintiff Gomez.

176.    The harm or injury to Plaintiff is the type of harm or injury the New Mexico legislature, through statutes and ordinances, sought to prevent.

177.    Defendants' violation of these statutes constitutes negligence *per se*.

178.    As a direct and proximate result of Defendants' negligence *per se*, Plaintiff Gomez has suffered damages as enumerated herein.

## COUNT XII – UNREASONABLE DELAY
### (All Defendants)

179.    Plaintiff hereby incorporates all prior and succeeding allegations as if set forth fully herein.

180.    Collectively, Defendant Liberty Mutual breached its duties as an insurer to pay without unreasonable delay relative to Plaintiff's Uninsured/Underinsured claims pursued for serious personal injuries and punitive damages.

181.    As a direct and proximate result of the Defendants' egregious conduct; misrepresentations; and/or unreasonable delay, Plaintiff Gomez has suffered damages including

but not limited to: Plaintiff's actual damages for pain and suffering; punitive damages, plus all related costs and expenses due to the denial and/or unreasonable delay by the Defendants; Plaintiff's attorney's fees costs and expenses incurred in this action; ***Exemplary and Punitive Damages in an amount that will deter Defendant(s) and others from engaging in such wrongful conduct in the future and punish all Defendant(s) for their behavior as set out in Plaintiff's Complaint***; and pre- and post-judgment interest.

## COUNT XIV – PUNITIVE DAMAGES
### (All Defendants)

182.    Plaintiff hereby incorporates all prior and succeeding allegations as if set forth fully herein.

183.    The acts and/or omissions complained of all the Defendants in the counts stated above are, upon information and belief, egregious in nature, knowing, reckless, wanton, intentional and in total disregard of the rights of Plaintiff.

184.    In addition to the actual damages ascertained and demonstrated by the evidence in this matter, punitive or exemplary damages are appropriate to punish and deter these types of acts and omissions from occurring in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Rose Gomez prays for judgment against all the Defendants for the following:

a.  The amount of Plaintiff's damages including actual; consequential; and special damages resulting from Defendant's wrongful acts and/or omissions as stated in each Count of Plaintiff's Complaint, including the entire amount of the claim plus all related costs and expense including but not limited to

attorney's fees and costs, due to the breach as described in each Count of Plaintiffs complaint by Defendant, its agents; servants; and or employees;

b.  Past; Present and Future pain and suffering;

c.  Future Medical Expenses;

d.  Past; Present and Future loss of earning capacity;

e.  Lost Wages;

f.  Loss of Society;

g.  Punitive Damages for Defendants' reckless acts;

h.  Plaintiff's attorneys' fees and costs in this action as allowed by law;

i.  Exemplary and Punitive Damages in an amount that will deter Defendants and others from such wrongful conduct in the future and punish them for their behavior as alleged in this Complaint;

j.  Treble damages as stated in each Count of Plaintiffs Complaint;

k.  Pre- and post-judgment interest; and

l.  Such other relief as this Court deems necessary and appropriate.

Respectfully submitted,

**BLEUS & ASSOCIATES, LLC**

George Anthony Bleus, Esq.
Jonathan D. Woods, Esq.
2633 Dakota NE
Albuquerque, NM 87110
Telephone: (505) 884-9300
Facsimile: (505) 884-9305
*Attorneys for Plaintiff*

FILED IN MY OFFICE
DISTRICT COURT CLERK
5/27/2017 10:13:36 AM
James A. Noel
Patricia Serna

**SECOND JUDICIAL DISTRICT COURT**
**COUNTY OF BERNALILLO**
**STATE OF NEW MEXICO**

GRACIELA GOMEZ,                                )
                                               )
                Plaintiff,                     )
v.                                             )
                                               )
CATHY GARLINGER;                               )
LIBERTY MUTUAL GROUP, INC.,                    )      Civil Action No:  D-202-CV-2017-03803
d/b/a LIBERTY MUTUAL FIRE                      )
INSURANCE COMPANY;                             )
AND ADJUSTERS PAMELA BLAKE;                    )
BARBARA MERRING; VICKI MATLACK;                )
ZACHERY WEICHMAN, AND                          )
PRESENTLY UNKNOWN JOHN DOES,                   )
                                               )
                Defendants.                    )

## <u>COURT – ANNEXED ARBITRATION CERTIFICATION</u>

<u>GRACIELA GOMEZ by and through counsel, BLEUS & ASSOCIATES, LLC</u>, pursuant
to the Second Judicial District Local Rule 2-603 certifies as follows:

_____   This party seeks **<u>only a money judgment and the amount sought does not
          exceed</u>** twenty five thousand dollars ($25,000.00) exclusive of punitive damages,
          interest, costs and attorneys fees.


__X__     This party seeks relief **<u>other than a money judgment and/or seeks relief in
          excess of</u>** twenty five thousand dollars ($25,000.00) exclusive of punitive
          damages, interest, costs and attorneys fees.


                                        _____
                                        GEORGE ANTHONY BLEUS, Esq.
                                        BLEUS & ASSOCIATES, LLC
                                        2633 DAKOTA, NE
                                        ALBUQUERQUE, NM 87110
                                        (505) 884-9300 office
                                        (505) 884-9305 fax



**null / ALL**
**Transmittal Number: 17423116**
**Date Processed: 11/21/2017**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Bruce Buttaro<br>Liberty Mutual Insurance Company<br>175 Berkeley Street<br>Boston, MA 02116 |

| | |
|---|---|
| **Entity:** | Liberty Mutual Group Inc.<br>Entity ID Number  2541558 |
| **Entity Served:** | Liberty Mutual Group, Inc. |
| **Title of Action:** | Graciela Gomez vs. Cathy Garlinger; Liberty Mutual Group, Inc. |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Bernalillo County  District Court, New Mexico |
| **Case/Reference No:** | D-202-CV-2017-03803 |
| **Jurisdiction Served:** | New Mexico |
| **Date Served on CSC:** | 11/20/2017 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | NM Superintendent of Insurance on 11/13/2017 |
| **How Served:** | Certified Mail |
| Sender Information: | George Anthony Bleus<br>505-884-9300 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

STATE OF NEW MEXICO
**OFFICE OF SUPERINTENDENT OF INSURANCE**
Mailing Address: P.O. Box 1689, Santa Fe, NM  87504-1689
Physical Address: 1120 Paseo de Peralta, Room 428, Santa Fe, NM  87501
Main Phone: (505) 827-4601; Main Fax (505) 827-4734; Toll Free: 1-855-4-ASK-OSI
www.osi.state.nm.us

**SUPERINTENDENT OF INSURANCE**
John G. Franchini – (505) 827-4299

**Service of Process**
Room 432
(505) 827-4241

**DEPUTY SUPERINTENDENT**
Robert Doucette – (505) 827-4439


November 16, 2017

Liberty Mutual Group, Inc.
C/O Corporation Service Company
123 E. Marcy St. Ste. 101
Santa Fe, NM 87501

**RE:    GRACIELA GOMEZ V. CATHY GARLINGER; LIBERTY MUTUAL GROUP, INC., D/B/A LIBERTY FIRE INSURANCE COMPANY AND ADJUSTERS PAMELA BLAKE; BARBARA MERRING; VICKI MATLACK; ZACHERY WEICHMAN, AND PRESENTL UNKNOWN JOHN DOES**
     **D-202-CV-2017-03803**


Dear Mr. President:

In accordance with the provisions of NMSA 1978, Sections 59A-5-31 & 59A-32, enclosed is a copy of a Summons, Court - Annexed Arbitration Certification, Complaint For Breach Of Contract, Negligence, Fruad, Breach Of The Covenant Of Good Faith and Fair Dealing, Violation Of New Mexico Unfair Claims Practices Act, Violation Of New Mexico Unfair Trade Pract on the above styled cause.  Service was accepted on your behalf on 11/13/2017.


Respectfully,

John D. Franchini

John G. Franchini, Superintendent

CERTIFIED MAIL   7009 3410 0000 2324 7202

| SUMMONS | |
|---|---|
| District Court: SECOND JUDICIAL Bernalillo County,  New Mexico P.O. Box 488 / 400 Lomas NW Albuquerque, New Mexico 87103 Court Telephone No.: 505-841-7451 | Case No. D-202-CV-2017-03803 |
| | Judge: Honorable Valarie Huling |
| Plaintiff: Graciela Gomez,           v. Defendant (s): Cathy Garlinger; Liberty Mutual Group, Inc., d/b/a Liberty Mutual Fire Insurance Company; and Adjusters Pamela Blake; Barbara Merring; Vicki Matlack; Zachery Weichman, and Presently Unknown John Does, | Defendant: Liberty Mutual Group, Inc. d/b/a Liberty Mutual Fire Insurance Company c/o: Office of the Superintendent of Insurance P.O. Box 1689 Santa Fe, New Mexico 87504-1689 |

**TO THE ABOVE NAMED DEFENDANT(S):**  Take notice that

1.      A lawsuit has been filed against you.  A copy of the lawsuit is attached.  The Court issued this Summons.

2.      You must respond to this lawsuit in writing.  You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons.  (The date you are considered served with the Summons is determined by Rule 1-004 NMRA)  The Courts address is listed above.

3.       You must file (in person or by mail) your written response with the Court.  When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4.      If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5.      You are entitled to a jury trial in most types of lawsuits.  To ask for a jury trial, you must request one in writing and pay a jury fee.

6.      If you need an interpreter, you must ask for one in writing.

7.      You may wish to consult a lawyer.  You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at Albuquerque, New Mexico, this ____10/5/2017____ .

JAMES A. NOEL
CLERK OF THE DISTRICT COURT

By: _____
Cathy Chavez Deputy

/s/ George Anthony Bleus
*Attorneys for Plaintiff*
Bleus & Associates, LLC
George Anthony Bleus, Esq.
Jonathan D. Woods, Esq.
2633 Dakota, NE
Albuquerque, New Mexico 87110
(505) 884-9300 Tele (505) 884-9305 Fax
bleusandassociates@gmail.com/
paralegal1.bleuslaw@gmail.com

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

**RETURN**

STATE OF NEW MEXICO        )
                                    ) ss

COUNTY OF BERNALILLO      )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____ County on the _____ day of _____, 2017, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:
**(check one box and fill in appropriate blanks)**

[ ] to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses summons and complaint*).

[ ] to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ] to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

[ ] to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

[ ] to _____, an agent authorized to receive service of process for defendant _____.

[ ] to _____, [parent] [guardian] [custodian] [guardian ad litem] of defendant _____ (*used when the defendant is a minor or an incompetent person*).

[ X ]   to (_____), agent for the Office of the Superintendent of Insurance, (*title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: $_____

_____
Signature of Person Making Service

_____
Title, if any

Subscribed and sworn before me this _____ day of _____, 20___.

My Commission Expires:

_____

_____
Notary Public